Nancy A. Mismash, 6615
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, UT 84107
Tel: (801) 262-8915
Facsimile: (801) 262-8995
*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIANE JORGENSEN,<br><br>        Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL GROUP, INC.,<br>a Delaware corporation, and<br>WRIGHT MEDICAL TECHNOLOGY,<br>INC., a Delaware corporation,<br><br>        Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:18-cv-00366-EJF<br><br>Honorable Evelyn J. Furse |

## PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Diane Jorgensen, through undersigned counsel, hereby responds to Defendant

Wright Medical Group, Inc.'s Memorandum of Law in support of its Motion to Dismiss for Lack

of Personal Jurisdiction and states as follows:

### I.        INTRODUCTION

Wright Medical Group, Inc. ("WMG") seeks dismissal pursuant to Fed. R. Civ. P.

12(b)(2) for lack of personal jurisdiction, arguing that it is a purported "holding" company

1

without any connection to the design, manufacture, testing, distribution, marketing, or sale of any hip implant products including the CONSERVE® products at issue in Plaintiff's complaint. WMG's arguments fail for four reasons.

First, WMG's motion fails because the allegations in Plaintiff's complaint allege that WMG designed and manufactured the CONSERVE® hip product and marketed and sold it in Utah. This product was implanted in Plaintiff's hip in Utah.  The product was defective and ultimately failed, causing the injuries, damages, and losses sustained by Plaintiff in Utah. Contrary to Defendant's motion, those allegations specifically connect WMG and its product to the forum and to this litigation. Under the controlling law, Plaintiff's allegations on their face confer personal jurisdiction over Wright Medical Group. Accepting the allegations in Plaintiff's complaint as true, the Court must reject WMG's motion.

Second, Defendant's affidavit submitted with its motion conflicts with the competent written evidence submitted with this response, which supports the jurisdictional facts alleged by Plaintiff. WMG's Securities and Exchange Commission statements, along with WMG's own press releases—statements for which this Court may take judicial notice—contradict WMG's affidavit and create genuine issues of material fact concerning WMG's direct involvement in the design, manufacture, marketing, and sale of the defective CONSERVE® device implanted into Plaintiff's hip.

Third, other courts that have considered WMG's purported status of a holding company on summary judgment have concluded that WMG was more involved in the manufacture and sale of the CONSERVE® hip system than one would expect of a holding company. Contrary to

WMGs motion, numerous courts have <u>denied</u> WMG's motion to dismiss, including several

rulings on Fed. R. Civ. P. 56 motions for summary judgment. After reviewing the documents

produced during discovery, those courts concluded WMG was directly involved with the

product at issue in this case.

Fourth, the evidence further confirms that Wright Medical Group controlled the

manufacture and sale of Plaintiff's CONSERVE® hip device to Utah, and that Wright Medical

Group, Inc.—not Wright Medical Technology, Inc.—realized a significant profit from the sale

of the CONSERVE® product line.

Thus, although WMG submitted an affidavit of its senior manager claiming WMG has no

connection to the forum or the product at issue in this litigation, the written evidence submitted

herewith shows that WMG's affidavit only creates conflicting jurisdictional facts that require

denial of Defendant's motion. The WMG affidavit directly conflicts with WMG's own factual

statements, supporting Plaintiff's allegations in her complaint. The conflicting jurisdictional facts

support *prima facie* evidence of specific personal jurisdiction over WMG. Consequently, the

Court should deny the Defendant's motion.

## II.    CONTROLLING LAW

Plaintiff pleaded specific personal jurisdiction against WMG in her complaint. "The

inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant

"focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v.*

*Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). The specific jurisdiction

analysis in Utah involves a three-part inquiry: "(1) the defendant's acts or contacts must

3

implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's

claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must

satisfy the requirements of federal due process." *Soma Med. Int'l v. Standard Chartered Bank*,

*196 F.3d 1292, 1295 (10th Cir. 1999)*. The Utah Legislature has determined the Utah long-arm

statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest

extent permitted by the due process clause of the Fourteenth Amendment to the United States

Constitution." *Utah Code Ann. § 78B-3-201(3) (West 2008)*.

The due process analysis is usually made first "because any set of circumstances that

satisfies due process will also satisfy the long-arm statute." *Soma Medical Intern.*, 196 F.3d at

*1298*. The Court's specific jurisdiction due process inquiry is two-fold:

> First, we must determine whether the defendant has such minimum contacts with
> the forum state "that he should reasonably anticipate being hauled into court there."
> Within this inquiry we must determine whether the defendant purposefully directed
> its activities at residents of the forum, and whether the plaintiff's claim arises out of
> or results from "actions by the defendant himself that create a substantial
> connection with the forum state." Second if the defendant's actions create sufficient
> minimum contacts, we must then consider whether the exercise of personal
> jurisdiction over the defendant offends "traditional notions of fair play and
> substantial justice." This latter inquiry requires a determination of whether a district
> court's exercise of personal jurisdiction over a defendant with minimum contacts is
> "reasonable" in light of the circumstances surrounding the case.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations

omitted). The analysis ensures that a defendant will not be hauled into a jurisdiction solely as a

result of 'random,' 'fortuitous,' or 'attenuated' contacts. *Burger King Corp. v. Rudzewicz*, 471

*U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).*

Under Utah law, if jurisdictional allegations are challenged, a plaintiff must then support the jurisdictional complaint allegations by competent proof of the supporting facts. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). Here, Defendant WMG seeks dismissal for lack of personal jurisdiction pursuant to a Fed. R. Civ. P. 12(b)(2) motion, claiming it has no connection to the forum.

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Brockbank v. Wolfe*, No. 2:13-CV-00938-DN, 2014 WL 2615827 (D. Utah June 12, 2014) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091). "The plaintiff may make this prima facie showing by demonstrating, via affidavit **or other written materials**, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091 (emphasis added). When evaluating the documentary evidence, the court does not act as a fact finder.. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). The Tenth Circuit has acknowledged that when evaluating the personal jurisdictional issue "[i]n the preliminary stages of litigation . . . the plaintiff's burden is light." *Wenz*, 55 F.3d at 1505.

## III.   ARGUMENT

### A. Plaintiff's complaint unambiguously alleges that Wright Medical Group was directly engaged in the business of designing, licensing, manufacturing, distributing, marketing, and selling the product at issue in this case.

As an initial matter, WMG does not dispute that Plaintiff was implanted with a CONSERVE® hip device on June 1, 2009, nor that the products implanted were not designed, manufactured, and marketed by a Wright company. Indeed, it is undisputed that the Wright

Company that designed, manufactured, and marketed the CONSERVE® products implanted in Plaintiff in Utah, purposefully conducted business in Utah, invoking the benefits and protections of Utah's laws and subjecting itself to specific personal jurisdiction. Plaintiff's complaint contains allegations against both Wright Medical Technology, Inc., and Wright Medical Group, Inc. in this regard.

Plaintiff's complaint unambiguously alleges that Wright Medical Group, Inc. was directly engaged in the business of designing, licensing, manufacturing, distributing, marketing, and selling the product in question. However, the Defendant's motion incorrectly claims Plaintiff "conflates WMG and WMT as one entity by using the term "Wright."   Plaintiff entirely fails to differentiate between the two corporate entities, and pleads no facts that justify ignoring the separate corporate existence between WMG and WMT."  (Motion, p. 2).  Although Plaintiff's complaint does contain allegations that WMT is a subsidiary of WMG, the complaint does not allege that WMG's sole role with respect to the CONSERVE® products was that of a parent over a subsidiary. Rather, Plaintiff alleges WMG's direct role in designing, manufacturing, and selling, the CONSERVE® Hip System implanted in Plaintiff in Utah.

Specifically, Plaintiff alleges, Defendants, either directly or through their agents, apparent agents, servants or employees, ***sold, distributed and marketed the defective Wright Hip System in the State of Utah****.*"  (Complaint, paragraph 13, emphasis added). "Defendants" is defined in

the complaint as **both** WMG and WMT. (*Id.*, paragraph 11).[1] As such, allegations against the "Defendants" must be read as allegations against both WMT ***and*** WMG.

Thus, for example, when Plaintiff alleges in paragraphs 50 and 58, (among others), that the CONSERVE® device was designed, manufactured, labeled, marketed, and distributed by the "Defendants," those allegations must be read as alleging that the hip device was designed, manufactured, labeled, marketed, and distributed by Wright Medical Group and the individual Causes of Action are directly alleged against Wright Medical Group for its direct role in causing Plaintiff's alleged injuries in Utah.

Moreover, the complaint includes allegations against "Wright Medical." (*See Id.*, paragraphs 8, 10, 11, 12, and 13). Like the term "Defendants," "Wright Medical" is a term defined by the complaint, and specifically includes ***both*** WMG and WMT. (*Id.*, paragraph 11). As such, when Plaintiff makes allegations against "Wright Medical," those allegations must be read as allegations directly against WMG. Given the allegations, it is the Defendant, not Plaintiff, who is trying to conflate WMT and WMG.

---

[1] That Plaintiff combines these two companies together for reference does not alter the fact that Plaintiff's claims are brought against each as separate entities. WMG and WMT are also alleged to be "parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of each other" —in other words, one is acting for or on behalf of the other. (Complaint, paragraph 11). This allegation also makes the factual claims against WMG direct, rather than through a parent/subsidiary relationship. Plaintiff is entitled to make alternative, even conflicting, allegations in support of its claims. Fed. R. Civ. P. 8(d)(2) and (3).

The factual allegations of Plaintiff's complaint against WMG establish that WMG expected and intended that its hip products—sold nationwide—would be distributed and sold in the State of Utah, which is what occurred here. (*See Id.*, paragraph 8). Moreover, although WMG may use its wholly owned subsidiary, WMT, as the national distributor of its products, that does not render WMG immune from suit in Utah when—as shown by the written documentation provided herein—WMG is the company that designs, manufactures, and sells the products. *See e.g.,* cases listed in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 2801, 2804–2806, 180 L. Ed. 2d 765 (2011) (J. Ginsberg, Dissent) ("Courts, both state and federal, confronting facts similar to those here, have rightly rejected the conclusion that a manufacturer selling its products across the USA may evade jurisdiction in any and all States, including the State where its defective product is distributed and causes injury.")

Contrary to Defendant's motion, Plaintiff's complaint alleges sufficient jurisdictional facts stating –Wright Medical Group purposefully availed itself of the privilege of conducting business in Utah, and that Ms. Jorgensen 's claims arose from Wright Medical Group's direct contacts with Utah. *Brockbank*, 2014 U.S. Dist. LEXIS 81104, *4 (Plaintiff need only show a reasonable inference that the court has jurisdiction over the defendant.). Here, Plaintiff has fully alleged that the defendant's acts and contacts implicate Utah under the Utah long-arm statute and that a 'nexus' exists between the Plaintiff's claims and the Defendant's acts and contacts.

**B.  Plaintiff's competent evidence supports Plaintiff's complaint allegations that WMG designed, manufactured, marketed, tested, and sold the CONSERVE® hip device.**

In an attempt to contradict the Plaintiff's allegations against WMG, Defendant attached the affidavit of Ms. Debby Daurer, a Senior Manager at Wright Medical Technology, Inc.  Ms. Daurer's affidavit makes conclusory statements that WMG has nothing to do with the product at issue. But, Ms. Daurer's affidavit is contradicted by WMG's public statements to the Securities and Exchange Commission, WMG's  press releases, and various marketing material created by WMG—all of which this Court may take judicial notice.[2] This competent written evidence

---

[2]    Fed. R. Evid. 201 governs judicial notice: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under the Rule, the court may take judicial notice on its own and "must take judicial notice if a party requests it and the court is supplied with the necessary information." The court may take judicial notice at any stage of the proceeding. Fed. R. Evid. 201.

Judicial notice is appropriate for SEC filings and press releases as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *see, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (taking judicial notice of SEC filings, press releases, analysts' reports, news articles, and stock prices); *In re Network Assocs. Sec. Litig.*, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. Mar. 25, 2003) *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1293 (D. Colo. 2013), *aff'd,* 776 F.3d 1103 (10th Cir. 2015) (Court properly took "judicial notice of various publicly-available documents, including GRC press releases, forms filed with the SEC, transcript of earnings conference calls, and a Google Finance chart showing opening and closing stock prices on August 10, 2012."). Moreover, the filings and press releases are not hearsay because Wright has plainly "manifested an adoption or belief in [the] truth" of the representations made. Fed. R. Evid. 801(d)(2)(B). *See Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 2008 U.S. Dist. LEXIS 26949, 27-28 (S.D.N.Y. 2008); see e.g., **Exhibits 1,** pp. 81-83) (10-K certifications by COO and CEO).

The judicial notice being taken, of course, is not the Court's determination that the statements are true; rather, it is a judicial determination that the statements were in fact made by

creates, at the least, genuine issues of material fact regarding WMG's direct involvement in the design, manufacture, marketing, and sale of Wright's hip implant products, including the defective CONSERVE® product implanted in Plaintiff.

   **a.  *SEC Statements***

As a publicly traded company, WMG is required to file various public documents and disclosures with the Securities and Exchange Commission. (*See* Section 13 and 15(d) of the Securities and Exchange Act of 1934). WMG filed many quarterly and annual reports detailing its company, its business, its products, and its financial statements. This is critical here because WMG has for many years publicly identified itself as the company that specializes in the design, manufacture and marketing of reconstructive joint devices, and has claimed the Wright products—including the CONSERVE® products at issue here—as its own. While WMG may now claim that Wright Medical Technology, Inc. is the sole designer, manufacturer, and marketer of the Wright hip implant products, WMG's various public SEC filings, of which the court may take judicial notice, all render that claim dubious.

Ms. Daurer's claims that "WMG is a holding company that has no employees," and that WMG "owns no real property in Utah, and has no clients or employees in Utah," *inter alia*. (Affidavit, paragraphs, 8, 14). However, the plain reading of WMG's SEC statements contradicts Ms. Daurer's declaration.

_____

the Wright Medical Group, Inc., thus creating a disputed question of fact between what Wright Medical Group, Inc. has publicly stated for many years, and what is being said by Ms. Daurer in her affidavit crafted for use in this litigation.

For example, WMG's Annual 10-K Report filed in 2001 makes the following statements:

**2001 10-K (Exhibit 1)**
Overview:

  **Wright Medical Group, Inc. (the "Company") is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices** and bio-orthopaedic materials. Reconstructive joint devices are used to replace knee, **hip** and other joints that have deteriorated through disease or injury. (p. 2).

History:

  **The Company acquired Cremascoli Ortho Group** ("Cremascoli"), based in Toulon, France. This **acquisition extended the Company's product offerings**, enhanced the Company's product development capabilities, and expanded the Company's European presence. **As a result of combining Cremascoli's strength in hip reconstruction** with Wright's historical expertise in knee reconstruction and bio-orthopaedic materials, the Company now offers orthopaedic surgeons a broad range of reconstructive joint devices and bio-orthopaedic materials in over 40 countries. (p. 2).

Hip Reconstruction:

  The **Company offers a comprehensive line of products for hip joint reconstruction**. This product portfolio, which was strengthened by the Cremascoli acquisition, provides offerings in the areas of bone-conserving implants, **total hip reconstruction, revision replacements implants**, and limb preservation. Additionally, the **Company's hip products offer a combination of innovative modular designs**…

  The **CONSERVE** – Registered Trademark – Hip System provides a conservative restoration, or bone conserving, alternative to conventional total hip reconstruction, and the company believes it is becoming the treatment of choice for avascular necrosis, or AVN, of the femoral head … (p. 8).

  Through the Company's acquisition of Cremascoli, **several hip implant products designed for the European market, including** the ANCA FIT-Registered Trademark – Hip System and **PROFEMUR-TM-R Hip System, were acquired** . . . (p. 8).

Product Development:

  Modular hip systems are growing in popularity, especially in revision replacement hip implant procedures. The PROFEMUR-TM-R was designed by Cremascoli for the

European market. Although **the Company is currently selling this product in the U.S.**, **the Company is also developing a modified version and instrumentation to address the needs of U.S. surgeons**. The new system, the PROFEMUR -TM-USA Modular Hip will capitalize on the successful clinical history of the current PROFEMUR -TM-R product while incorporating new technology into the design. (p. 11).

Manufacturing and Supply:

> **The Company operates manufacturing facilities in both Arlington, Tennessee and Toulon, France. These facilities primarily produce orthopaedic implants and some of the related surgical instrumentation** used to prepare the bone surface and cavities during the surgical procedure. The majority of the Company's surgical instrumentation is produced to the Company's specifications and designs by qualified subcontractors who serve medical device companies. (p. 14).

Employees:

> As of December 31, 2001, **the Company employed directly** and through **our** subsidiaries 751 people in the following areas: 347 in manufacturing, 217 in sales and marketing, 121 in administration and 66 in research and development. (p. 17).

(emphasis added).

Plainly, Wright Medical Group, Inc. unambiguously identified itself—and only itself—as

the "Company" whose products are being discussed in the 10-K filing. Contrary to Ms. Daurer's

affidavit, subsidiaries—including Wright Medical Technology, Inc.—are *not* included within

that "Company" reference. WMG plainly separates its subsidiaries (such as Wright Medical

Technology, Inc.) from the "Company."[3] This separation is critical to the inquiry because

WMG's SEC filings specifically identify the "Company's" (i.e., Wright Medical Group, Inc.),

---

[3] For example, see also **Exhibit 1**, p. 21, where WMG plainly separates WMG from Wright Medical Technology, Inc. in its filings. ("The following table sets forth certain selected consolidated financial data of Wright Medical Group, Inc. (the "Company") and Wright Medical Technology, Inc., (the "Predecessor Company") . . .

business as designing, manufacturing, and marketing of reconstructive joint devices—the very fact Defendant now disputes in its motion.

While WMG may claim today to have no employees and not be the designer and distributor of the hip system at issue in this case, that was plainly not its claim in the years preceding Ms. Jorgensen's hip implant when WMG unambiguously claimed the CONSERVE® product as its own. Contrary to the Defendants' representations, the Form 10-Ks filed by WMG do not identify WMG as simply a "holding company" unaffiliated with any design, manufacturing, or marketing of Wright's products as represented by Ms. Daurer's affidavit, nor is there any identification of Wright Medical Technology, Inc. as the sole designer, manufacturer, or seller of any products sold by Wright. Contrary to Ms. Daurer's affidavit, the public representations of Wright have always been that Wright Medical Group., Inc. is the designer, tester, manufacturer, marketer, and seller of hip products, including the CONSERVE® hip products.

In the years since the CONSERVE® product was implanted in the Plaintiff, WMG has never disclaimed ownership and responsibility for its CONSERVE® products in its SEC filings. WMG continued into 2014 to represent to the public that the CONSERVE® product was its own.  Significantly, in reference to the product defect lawsuits against it concerning its CONSERVE® products, WMG represents in its 2013 10-K that these lawsuits involve "our CONSERVE® series of hip replacement devices," stating:

<u>Product Liability Lawsuits Could Harm Our Business</u>:

We have received more than 700 claims for personal injury associated with metal-on-metal hip replacement systems.  The number of claims continues to increase, we believe due to the negative publicity in the industry regarding these devices.  (**Exhibit 2, p. 13**).

Claims for personal injury have also **been made against us associated with fractures of our PROFEMUR (R)® long titanium modular neck product**. We believe that the overall fracture rate for the product is low and the fractures appear, at least in part, to relate to patient demographics, and have been vigorously defending these matters. While continuing to dispute liability, we have been open to settling these claims in circumstances where we believe the settlement amount is reasonable relative to the risk and expense of litigation. (**Exhibit 2, p. 14**).

<u>Product Liability</u>:

Additionally, as of February 21, 2014, **we are a defendant in 25 lawsuits** in various state and federal courts involving claims for damages for personal **injury associated with fractures of our PROFEMUR (R)® long titanium modular neck product**. (**Exhibit 2, p. 25**).

In that same 10-K, WMG discusses in detail the impact of metal-on-metal (primarily our

CONSERVE ® product line).  They state:

During the quarter ended September 30, 2012 we received a customary reservation of rights from our primary product liability insurance carrier asserting that certain present and future claims which allege certain types of injury related to our CONSERVE ® metal-on-metal hip products (CONSERVE ® Claims) would be covered as a single occurrence under the policy year the first such claim was asserted.  (**See Exhibit 2, p. 48**).

The PROFEMUR® product defect claims on Wright Medical Group, Inc.'s balance sheet

is discussed in detail; "our liability" and the product liability insurance that WMG has used—and

has exhausted—for the PROFEMUR® and CONSERVE ® claims. (See **Exhibit 2, p. 47-48**).

Here, the use of the term "our" plainly refers only to WMG; as with all its SEC filings, Wright

14

Medical Group, Inc., plainly separates WMG from its subsidiaries. This again conflicts with the

Defendant's affidavit, creating jurisdictional facts that cannot be resolved on a motion to dismiss.

In summary, Wright Medical Group, Inc.'s public SEC filings provide sufficient

competent evidence, consistent with the allegations of Plaintiff's complaint, that creates factual

conflicts establishing Plaintiff's *prima facie* showing of personal jurisdiction.

**b.** *Press Releases*

Consistent with WMG's SEC filings, this Court may also take judicial notice, pursuant to

Fed. R. Evid. 201[4], of WMG's  public press releases in which it describes itself as "a global

orthopaedic medical device company specializing in the design, manufacture and marketing of

reconstructive joint devices" and of its claimed responsibility for the CONSERVE® products.

WMG released the following press releases[5] that contain language concerning its CONSERVE®

products:

- August 14, 2006 – "***Wright Medical Group, Inc.*** *Teams Up With Jimmy Connors for Dynamic Patient Education Outreach Program*." WMG's press release states "The website 'jimmysnewhip.com' and print collateral from **Wright will focus on advances like larger diameter femoral heads**, modular neck technology and less invasive surgical options." (**Exhibit 3-1**, emphasis added).

- December 6, 2006 – "***Wright Medical Group, Inc.*** *to Host Webcast Featuring the Less Invasive PATH® Technique for Total Hip Arthroplasty*." WMG's press release states "The PATH® MIS technique and instrumentation are designed for use with **Wright's** PROFEMUR (R)® modular neck hip system, as well as the unique **CONSERVE ® Total acetabular system with BFH ® Technology.**" (**Exhibit 3-2**, emphasis added).

---

[4] See Footnote 2, above.

[5] Notably, the "contact" for each of these press releases is "Wright Medical Group, Inc., Arlington" and the "source" of the press releases is "Wright Medical Group, Inc."

- February 9, 2007 – "*Tennis Legend Jimmy Connors Joins Wright Medical to Share His Experiences of Total Hip Replacement During American Academy of Orthopedic Surgeons' Meeting.*" WMG's press release states "Additionally, **they selected the** PROFEMUR (R)® Modular Neck which allowed Dr. Penenberg to precisely equalize leg length…" (**Exhibit 3-3**, emphasis added).

These press releases do not support Ms. Daurer's affidavit that Wright Medical Technology, Inc. is the sole responsible party for the CONSERVE® hip system at issue in this litigation. Rather, the statements directly contradict Ms. Daurer's affidavit by showing that WMG participated in the design, manufacture, labeling, marketing, promotion, distribution, and sale of the CONSERVE® hip implant at issue.

WMG's press releases also address the issue of its ownership of property in Utah. On January 30, 2014, WMG released the following Press Release: "*Wright Medical Group, Inc. Announces Acquisition of Solana Surgical, LLC and Entry into Definitive Agreement to Acquire OrthoPro, LLC.*" (**Exhibit 3-4**). The press release goes on to state "OrthoPro**, based in Salt Lake City, Utah,** is dedicated to providing quality and innovative foot and ankle products**.**" (*Id.*, emphasis added).   These public statements by WMG directly contradict Ms. Daurer's affidavit. While WMG may claim today in this litigation to have no direct relationship to the CONSERVE® products, or to the forum state, that was plainly not what it was telling the public. Under Plaintiff's light burden of proof at this stage of the litigation, this Court should deny WMG's motion to dismiss.

16

**C. Numerous courts have denied Defendant WMG's request for dismissal for lack of personal jurisdiction.**

In its motion, WMG claims that "since 2015, federal courts across the country have routinely dismissed WMG from product liability actions at the motion to dismiss stage." (Motion, p. 13). WMG then misleads the Court into believing that only one Utah court has allowed a case to proceed, citing *Curtis W. Ricord v. Wright Medical Group, Inc. et. al.*

In truth, numerous federal courts have denied WMG's motion to dismiss and allowed discovery to proceed on the issue. As noted by Defendants, the court denied WMG's motion to dismiss in *Ricord v. Wright Medical Group, Inc. et. al.* The parties' oral argument on that issue is attached for the Court's review. **Exhibit 4**. Further, in *Martin L. Smith v. Wright Medical Group, Inc. and Wright Medical Technology, Inc.*, 2:15-cv-00140-DN, also decided in the District Court of Utah, the court concluded that "the press releases and SEC filings create issues of fact concerning the question of whether WMG exercised the requisite degree of "control" over WMT to allow the exercise of personal jurisdiction over WMG. Specifically, there is a question regarding the identity, function, and relationship between WMG and WMT." **Exhibit 5**. Critically, *Ricord* and *Smith* were decided prior to Defendant's filing its Fed. R. Civ. P. 26(a)(1) disclosures.[6]

Several other cases have addressed this issue on a Rule 56 motion for summary judgment.  In both cases, Defendant WMG's motion to dismiss was denied. WMG and WMT are defendants in two consolidated litigations involving the Conserve® metal-on-metal acetabular

---

[6] The parties reached agreements to settle both *Ricord* and *Smith* prior to discovery on WMG's purported holding company status.

components of its hip system: *See In re: Wright Medical Technology, Inc., Conserve Hip Implant*

*Products Liability Litigation*, 1:12-md-2329 ("MDL 2329), and Judicial Counsel Coordinated

Proceeding No. 4710 (JCCP 4710). The MDL court selected plaintiff Robyn Christiansen, a

plaintiff from Utah, as the plaintiff for the first bellwether trial.

      In *Christiansen*, WMG filed a motion for summary judgment to dismiss WMG. WMG

submitted a similar declaration from Ms. Daurer to support its contention that WMG was merely

a holding company. *Christiansen v. Wright Med. Tech., Inc. (In re Wright Med. Tech., Inc.)*,

2015 U.S. Dist. LEXIS 115601, *99 (N.D. Ga. Aug. 31, 2015).  On August 31, 2015, the MDL

court denied WMG's motion to dismiss. The MDL court concluded the following:

> "Some documents that Defendant *produced during discovery*, including bills of
> material, also support that WMG was more involved in the manufacture and sale
> of orthopaedic products, including the Conserve implant components, than one
> ordinarily might expect of a holding company. For example, documents entitled
> WMG's "Bill of Print Material," for the PROFEMUR® Neck 8DGA/R, Conserve
> Total A- Class Head, PROFEMUR ® Plasma Z Stem, and Conserve plus Cup,
> WMG's inventory by branch and location, and WMG's item listing by customer
> program, all facially support that WMG may have been involved in the
> manufacture, sale, or marketing of the Conserve hip replacement components."

*Id.*, at 103-104. The "Bill of Print Material" documents referenced in the MDL court's ruling are

the same documents WMT will ultimately have to produce in this case. As noted in section B,

*supra*, the Bill of Print Material documents will most likely confirm WMG's direct involvement

in the hip system at issue that was implanted in Plaintiff in the forum Utah.

      Further, on November 29, 2016, the court in JCCP 4710 denied WMG's motion to

dismiss. In its preliminary ruling, the court stated "Plaintiff has raised a triable issue of material

fact as to WMG's involvement in Plaintiff's CONSERVE device.[7] As an example, WMG is listed on the "Bill of Materials' produced with Defendants' Fact Sheet relating to Plaintiff's CONSERVE device. . . A trier of fact could reasonably infer that WMG held itself out to the public as the manufacturer of the device." **Exhibit 6**; *see also* **Exhibit 7**, pp. 4-26.

Accordingly, though Defendants told this Court that "the decision in *Ricord* is an anomaly," the truth is that the court in *Ricord*, along with other courts who have reviewed documents produced in the litigation, have all concluded that WMG is involved in the manufacture, design, marketing, and sale, of the CONSERVE® product. The same conclusion must be drawn here with Ms. Jorgensen.

**D. The documentary evidence further supports the allegations in Plaintiff's complaint that WMG controlled the manufacture and sale of Plaintiff's CONSERVE® hip device to Utah, and that WMG received the profit from the sale of the CONSERVE® product line.**

Beyond the SEC statements and press releases confirming WMG's involvement with the CONSERVE® products in general, the public evidence establishes that WMG controlled the entire stream of commerce from the design and manufacture of Plaintiff's CONSERVE® hip device, to its final point of sale in Utah.

WMG was formed in 1999-2000 through the combination of two companies: Cremascoli Ortho Group, Inc. ("Cremascoli") and WMT. WMG's marketing materials and SEC statements confirm that WMG acquired Cremascoli in order to extend WMG's product offerings, including

---

[7] The device Ms. Jorgensen received on June 1, 2009 consists of a 1) Profemur Raz Stem; Profemur neck; Conserve Total A Class head; and Conserve Plus Cup.  "PROFEMUR" device, is a component part of the CONSERVE® device. The "ball" and "cup" of Ms. Jorgensen 's CONSERVE® hip implant were CONSERVE devices; the neck is a PROFEMUR device.

the hip system. On January 4, 2000, WMG authored a press release stating: "The Wright Medical Group was formed by the merger of Wright Medical Technology of Arlington, Tennessee, and Cremascoli Ortho Group of Toulon, France . . . The combined ***Wright Medical Group*** will benefit from distribution channels and product lines which are very complementary." (See Exhibit 8 *Smith* case).

WMG did expand the hip system to the U.S. market while maintaining manufacturing operations in its manufacturing facilities in Toulon, France. Later, WMG began manufacturing the product in the United States. This product – controlled by WMG from its inception – was sold to Plaintiff on June 1, 2009, in Utah.

Then, in 2013, after WMG realized significant profits from the sale of its hip products to Plaintiff and others, WMG sold its hip and knee division, to MicroPort Scientific Corporation ("MicroPort"). In a press release dated January 9, 2014, WMG stated "Wright Medical Group, Inc. (NASDAQ: WMGI) today announced the closing of the transaction to divest its OrthoRecon business to MicroPort Scientific Corporation (HK: 0853) and its affiliates. The closing of the transaction occurred on January 9, 2014. (**Exhibit 9**). In a subsequent 10-Q report for the quarter ending March 31, 2014, WMG details the $285 million sale of its hip and knee products (its "OrthoRecon business"—which included its CONSERVE® products) to MicroPort. Critically, WMG did not state that the $285 million cash was the property of its subsidiary, Wright Medical Technology, Inc. Rather, WMG stated: "***we*** recognized approximately $24.3 million as the gain on disposal of the OrthoRecon business." (**Exhibit 10, pp. 10-11**, emphasis added).

Despite the substantial evidence that WMG manufactured Plaintiff's hip device and controlled the material used to manufacture that device, the undisputed allegations that the product was implanted in Plaintiff in Utah, and the evidence documenting WMG's profit of $24.3 million from the sale of its OrthoRecon business, which included the CONSERVE® products, WMG seeks dismissal from this case—without discovery—based on the affidavit of a corporate employee created solely for use in this litigation. WMG cannot overcome Plaintiff's *prima facie* showing of personal jurisdiction.

The statements WMG made in the SEC filings and press releases, and the financial gain WMG realized from the sale of its OrthoRecon business, create material evidence that disputes the conclusory affidavit submitted with WMG's motion. Considering the minimal burden imposed on Plaintiff at this early stage of the proceedings, WMG's motion should be denied.

In accordance with the standard outlined in *OMI Holdings, Wenz,* and *Brockbank,* Plaintiff has provided competent written materials that create genuine issues of material fact regarding WMG's direct involvement in the design, manufacture, and marketing of the CONSERVE® products at issue here.  Consequently, the Defendant's motion should be denied.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny WMGs Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, and allow the parties to conduct discovery. If the Court is inclined to resolve the conflicting jurisdictional facts prior to discovery or trial, Plaintiff requests a hearing be held. Plaintiff further requests the Court grant such other and further relief as the Court deems just, reasonable, and proper.

Dated: September 13, 2018.               Respectfully submitted,

s/ Nancy A. Mismash
Robert J. Debry & Associates
4252 South 700 East
Salt Lake City, UT 84107
Phone: (801) 262-8915
nmismash@robertdebry.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2018, a true and correct copy of the

foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S**

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** was filed using the

court's electronic system, which sent notice to the following:

Elisabeth M. McOmber, Esquire (#10615)
**SNELL & WILMER**
15 W South Temple #1200
Salt Lake City, UT 84101-1531
Telephone: 801.257.1880
Fax: 801.257.1800
emcomber@swlaw.com

Danielle N. Bagwell, Esquire, (*pro hac vice* forthcoming)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Phone: 215.979.1197
Fax: 215.754.4907
DNBagwell@duanemorris.com

Sean K. Burke, Esquire (*pro hac vice* forthcoming)
**DUANE MORRIS LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: 202.776.5236
Fax: 215.827.5491
SBurke@duanemorris.com

*Attorneys for Defendants Wright Medical Group, Inc.
and Wright Medical Technology, Inc.*

 */s/   Lori Harper*