IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIANE JORGENSEN,<br><br>                Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL GROUP, INC., a Delaware corporation, and WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT WRIGHT MEDICAL GROUP'S MOTION TO DISMISS<br><br>Case No. 2:18-CV-366 TS<br><br>District Judge Stewart |

This matter is before the Court on Defendant Wright Medical Group, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. For the foregoing reasons, the Court grants Defendant's Motion to Dismiss.

I.       BACKGROUND

Plaintiff Diane Jorgenson filed her Complaint against Defendants Wright Medical Group, Inc. ("WMG") and Wright Medical Technology, Inc. ("WMT") on May 4, 2018. WMT is a wholly owned subsidiary of WMG, and both are Delaware corporations with their principal places of business in Tennessee. Plaintiff's Complaint concerns injuries from the Wright Hip System used in her right and left hip replacement surgeries on June 1, 2009, and January 25, 2010, respectively. According to Plaintiff, this Court has specific jurisdiction over Defendants in this case because both Defendants "conducted regular and sustained business in Utah by selling and distributing its products in Utah, and engaged in substantial commerce and business activity

1

in the County of Salt Lake."[1] Plaintiff also alleges that "Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of Utah."[2]

On July 25, 2018, Defendant WMG filed its Motion to Dismiss, alleging that "WMG was merely a holding company with no involvement in the design, development, manufacture, marketing, or sale of the hip implant components at issue. . . . Simply put, WMG is the parent company of WMT and is WMT's sole shareholder."[3] WMG admits that Defendant WMT "did design, manufacture, and sell hip implants like that alleged to have been implanted in Plaintiff," but states "WMG did not."[4]

## II. DISCUSSION

"To obtain personal jurisdiction over a nonresident defendant . . . a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[5] Utah's long-arm statute provides "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment,"[6] so only the due process analysis is necessary to determine whether this Court has jurisdiction over WMG in this case.

---

[1] Docket No. 2 ¶¶ 8–9.

[2] *Id.* ¶ 13.

[3] Docket No. 9, at 3 (citations omitted).

[4] *Id.* at 4 (citations omitted).

[5] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[6] Utah Code Ann. § 78B-3-201(3).

Here, Defendant WMG brought a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant,"[7] and when a district court rules on this kind of motion without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[8] In these situations, "the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[9] "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[10]

The Supreme Court has established two main frameworks for establishing personal jurisdiction under the due process clause of the Fourteenth Amendment, including general and specific jurisdiction.[11] Plaintiff relies on specific jurisdiction to establish jurisdiction over WMG,[12] so this case only requires a specific jurisdiction analysis. There is specific jurisdiction when A) "the plaintiff has shown that the defendant has minimum contacts with the forum state,"[13] or B) there may be jurisdiction over WMG through the alter ego theory.

---

[7] *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1998)).

[8] *Id.* (citation omitted).

[9] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks and citations omitted).

[10] *Id.* (citation omitted).

[11] *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, --- U.S. ---, 137 S. Ct. 1773, 1779–80 (2017).

[12] *See* Docket No. 13, at 3 ("Plaintiff pleaded specific personal jurisdiction against WMG in her complaint.").

[13] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985); *Shrader v. Biddinger*, 633 F.3d 1235, 1239–40 (10th Cir. 2011)).

A.  Minimum Contacts

The Supreme Court explained that "due process requires only that . . . [the defendant] have certain minimum contacts with [the forum state] that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[14] To establish minimum contacts, "the relationship [with the forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum State,"[15] and the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[16] Minimum contacts also requires that "the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'"[17]

Plaintiff's Complaint alleges WMG and WMT both "sold, distributed and marketed the defective Wright Hip System in the State of Utah,"[18] but Defendant WMG submitted an affidavit with its Motion to Dismiss controverting this allegation. According to the affidavit, WMG has no contacts with Utah because it "is not registered to do business in Utah, does not transact business in Utah, maintains no office or place of business in Utah, owns no real property in Utah, and has no clients or employees in Utah."[19] The affidavit also explains that WMG "does not advertise, market, or offer services for sale in Utah."[20]

---

[14] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[15] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted).

[16] *Id.* at 285

[17] *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

[18] Docket No. 2 ¶ 13.

[19] Docket No. 9-1 ¶ 14.

[20] *Id.* ¶ 15.

Plaintiff argues the allegations in her Complaint "on their face confer personal jurisdiction over [WMG]"[21] because the Court should accept the allegations in the Complaint as true, but this is only "to the extent they are uncontroverted by the defendant's affidavits."[22] Here, the Complaint's allegations are not enough to establish jurisdiction because Defendant presented an affidavit that controverts Plaintiff's allegations. Further, the personal jurisdiction requirements "must be met as to each defendant,"[23] but Plaintiff's Complaint merges WMG and WMT together without adequately explaining which company does what in connection with her claims. Because these allegations are not specific, they do not clearly establish whether this Court has jurisdiction over both companies in this case.

To counter Defendant's affidavit, Plaintiff relies on WMG's SEC filings, press releases, and other cases in which WMG appears as a defendant. In regards to the SEC filings, Defendant's 2001 10-K Report says WMG "specializ[es] in the design, manufacture, and marketing of reconstructive joint devices" and "offers a comprehensive line of products for hip joint reconstruction."[24] This annual filing also says that "[a]s of December 31, 2001, the Company employed directly and through our subsidiaries 751 people."[25] Plaintiff also looks to a 2014 10-K report in which Defendant says it is a "defendant in 25 lawsuits" for personal injury.[26]

---

[21] Docket No. 13, at 2.

[22] *Wenz*, 55 F.3d at 1505.

[23] *Rush v. Savchut*, 444 U.S. 320, 332 (1980).

[24] Docket No. 13, at 11.

[25] *Id.* at 12.

[26] *Id.* at 14.

The Tenth Circuit has explained that it is a "common business practice" for parent and subsidiary companies to consolidate their financial reports,[27] so the 2001 SEC filings do not establish that WMG actually designed, manufactured, or marketed the implant devices. Later SEC filings confirm that WMG operates through WMT and other subsidiaries.[28] Additionally, the SEC filings do not mention Utah at all, so they do not provide any evidence that WMG purposely directed any of its activities to Utah or Utah residents.

Around the country, several federal district courts have dismissed WMG from cases against Defendants when the plaintiffs have used the same evidence Plaintiff included.[29] *Dumler* and *Simpson* used the same reports to try to establish specific personal jurisdiction.[30] These courts both reasoned that "[c]ourts have recognized that companies may omit distinctions between related corporate entities in their SEC filings, and still insist on these distinctions when haled into court."[31] Ultimately, these SEC filings are not sufficient to establish that WMG purposely directed its activities to Utah or Utah residents.

---

[27] *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1264 (10th Cir. 1989).

[28] Docket 20-2, at 5.

[29] *See Simpson v. Wright Med. Grp., Inc.*, No. 5:17-cv-00062-KGB, 2018 WL 1570795, at *12 (E.D. Ark. Mar. 30, 2018); *Bittner v. Wright Med. Grp., Inc.*, No. 4:17-cv-04241-SLD-JEH, 2018 WL 1115211, at *2 (C.D. Ill. Mar. 1, 2018); *Dumler v. Wright Med. Tech., Inc.*, No. C17-2033-LTS, 2018 WL 576848, at *16 (N.D. Iowa Jan. 26, 2018); *Sarafian v. Wright Med. Tech., Inc.*, No. 2:15-cv-09397-CAS(KSx), 2016 WL 1305087, at *7 (C.D. Cal. Apr. 1, 2016).

[30] *Compare* Docket No. 13, at 11 *with Simpson*, No. 5:17-cv-0062-KGB, 2018 WL 1570795, at *5–*6 *and Dumler*, No. C17-2033-LTS, 2018 WL 576848, at *6.

[31] *Simpson*, No. 5:16-cv-00062-KGB, 2018 WL 1570795, at *6 (quoting *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 824 (D. Ariz. 2016)); *see also Dumler*, No. C17-2033-LTS, 2018 WL 576848, at *6 (citing *Cheatham*, 161 F. Supp. 3d at 824).

Plaintiff also presents some press releases from 2006 and 2014. In the 2006 press release, WMG describes itself as a "global orthopedic medical device company specializing in the design, manufacture and marketing of reconstructive joint devices."[32] One 2014 press release is from the sale of OrthoRecon, and there is a 2014 press release about WMG acquiring OrthoPro, which is based in Salt Lake City, Utah.

These press releases do not establish a sufficient connection with Utah. While the latter press release does appear to establish some connection with Utah, there must also be a connection between WMG's activities in Utah and Plaintiff's claims to support a finding of specific jurisdiction. Plaintiff does not allege that OrthoPro or its foot and ankle products are related to Plaintiff's claims regarding her hip implants. The court in *Sarafian* considered the same and similar press releases and found that "none of these documents is evidence that WMG has any contacts in California."[33] This Court comes to the same conclusion and finds that none of these documents amount to evidence that WMG has sufficient minimum contacts in Utah to establish jurisdiction over WMG in this case.

Finally, Plaintiff points out two cases where courts have denied WMG's motions to dismiss for lack of personal jurisdiction and one case where the court failed to grant a motion for summary judgment in favor of WMG. Of the two cases Plaintiff alleges denied WMG's motions to dismiss, one of them took the issue under advisement to allow for jurisdictional discovery, and the other recognized that "the question of jurisdiction . . . can be raised at any time" because it

---

[32] Docket No. 13, at 15.
[33] No. 2:15-cv-09397, 2016 WL 1305087, at *5.

was unclear whether there would be jurisdiction after discovery.[34] As Defendant points out, *Christiansen v. Wright Medical Group* actually went to trial after the motion for summary judgment was denied, and "both plaintiff and defense counsel agreed that a directed verdict was appropriate on all claims against WMG because there was no evidence that WMG had any involvement with the allegations underlying plaintiff's complaint."[35] Ultimately, these cases do not provide legal support to show WMG has minimum contacts in Utah.

Because Plaintiff failed to make a connection between WMG's activities and the forum and Plaintiff's claims, Plaintiff has not made a prima facie showing that WMG has minimum contacts in Utah. Therefore, this Court does not have specific jurisdiction over WMG in this case.

B. Alter Ego Theory

In the Motion to Dismiss, Defendant argued that the alter ego theory cannot apply to WMG and WMT to establish personal jurisdiction over WMG. In her Response to the Motion to Dismiss, Plaintiff did not allege that there could be jurisdiction over WMG based on an alter ego theory, but her Complaint did briefly allege that "each of the Defendants was the representative, agent, employee, joint venture, or *alter ego* of each of the other Defendants,"[36] so the Court will apply an alter ego analysis.

"Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders."[37] Under Utah law, the alter ego theory allows courts to disregard the corporate

---

[34] Docket No. 13-8, at 35.
[35] Docket No. 20, at 8; Docket 20-4, at 17.
[36] Docket No. 2 ¶ 12 (emphasis added).
[37] *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973).

form when two requirements are met: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."[38]

Plaintiff's only evidence suggesting WMG and WMT do not have "separate personalities" are the facts already discussed regarding the SEC filings from 2001 and 2014 and the 2006 and 2014 press releases. As discussed above, combining parent and subsidiary corporations in these statements is a normal business practice that does not conclusively establish that WMG and WMT are essentially the same corporation. The plaintiff in *Dumler* relied on WMG's financial gain from the sale of OrthoRecon as evidence that WMG is the alter ego of WMT. The court in *Dumler* found "[t]hese assertions fall short of establishing that WMG is the alter ego of WMT" because "collective reference does not establish that corporate formalities have been ignored or that WMG is the alter ego of WMT."[39] This is consistent with the prior analyses of this evidence, so this is not enough to establish that the "separate personalities of the corporation[s] . . . no longer exist."[40]

To support the assertion that the two corporations do have separate personalities, Defendant's affidavit explains that WMG "maintains separate accounting and banking records from the accounting and banking records of [WMT]."[41] Plaintiff has not rebutted this statement.

---

[38] *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1575 (10th Cir. 1990) (quoting *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)).

[39] *Dumler*, No. C17-2033-LTS, 2018 WL 576848, at *8 (citation omitted).

[40] *Cascade Energy & Metals Corp.*, 896 F.2d at 1575 (citation omitted).

[41] Docket No. 9-1 ¶ 13.

In addition, Plaintiff offers no allegations that Defendants are committing any fraud or injustice with the observance of the corporate form. Plaintiff has not established the required elements for the alter ego theory to apply, so the alter ego theory cannot establish personal jurisdiction over WMG through WMT's actions in this case.

C. Jurisdictional Discovery

Plaintiff argues, in the alternative, to allow jurisdictional discovery. "The trial court . . . is vested with broad discretion" to determine whether jurisdictional discovery is appropriate in a particular case.[42] "The district court does not abuse its discretion by denying jurisdictional discovery where there is a very low probability that the lack of discovery" would affect the outcome of the case.[43]

In her argument for jurisdictional discovery, Plaintiff asserts "the Bill of Print Material documents" used in the *Christiansen* case "will most likely confirm WMG's direct involvement in the hip system at issue that was implanted in Plaintiff in the forum Utah."[44] As described above, the *Christiansen* court later dismissed WMG from the case for lack of evidence of WMG's involvement, despite the fact that the plaintiff had the Bill of Print Material documents. These are the only documents Plaintiff specifically suggests would help establish specific jurisdiction, and it is highly unlikely the documents would establish this Court's jurisdiction over WMG. As a matter within this Court's discretion, this Court will not allow jurisdictional discovery in this case.

---

[42] *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x. 86, 102 (10th Cir. 2012) (internal quotations and citation omitted).

[43] *Id.* at 103 (internal quotation marks and citation omitted).

[44] Docket 13, at 18.

## III. CONCLUSION

It is therefore

ORDERED that Defendant Wright Medical Group, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Docket No. 9) is GRANTED.

DATED this 29th day of November, 2018.

BY THE COURT:

_____
Judge Stewart
United States District Judge